UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN



UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 04-CR-241

RUO LING WANG,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Michelle L. Jacobs, Assistant United States Attorney, and the defendant, Ruo Ling Wang, individually and by attorneys Tom Phillip and Dean Strang, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in five counts of an eight-count superseding indictment which alleges violations of 18 U.S.C. §§ 2, 371, 1956(a)(2)(A), 1956(h); 50 U.S.C. § 1705(b); 15 C.F.R. §§ 764.2(a), 764.2(g); and related forfeiture provisions.

3.    Through the assistance of a translator, the defendant has read and fully understands the charges contained in the superseding indictment, and fully understands the nature and elements of the crimes with which she has been charged and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to plead guilty to Count Four, set forth in full as follows:

### COUNT FOUR: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about May 21, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### RUO LING WANG (a/k/a Wang Ruo Ling),

in connection with the preparation of an export control document, did knowingly and willfully make a false statement to, and conceal a material fact from, the Department of Commerce, Bureau of Industry and Security, and the United States Customs Service, both directly and indirectly through another.

3. In particular, the value of the shipment represented on the shipping invoice was $2,469.60, when in fact, the true value of the shipment exceeded $11,000.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(g).

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish her guilt beyond a reasonable doubt:

From the mid-1990s until September 30, 2004, Ruo Ling Wang assisted her husband, Jian Guo Qu, in the operation of Mr. Qu's business, Beijing Rich Linscience Electronics (BRLE), based in Beijing, China. BRLE was in the business of importing integrated circuits (IC) and other computer chips and electronic components for end-users in China.

BRLE's primary overseas source for electronic components was Wen Enterprises, a business started in California and later moved to Manitowoc, WI. Wen Enterprises was established by Ning Wen in August 1991, while Wen was employed in the Science and Technology Branch of the Chinese Consulate in Los Angeles. Wen operated the business by himself from 1991 through 1993, obtaining and exporting both export controlled and non-controlled parts to Mr. Qu in Beijing. Thereafter, Mr. Wen transferred the day-to-day operations of the business to his wife, Hailin Lin. Ms. Lin continued to conduct the day-to-day operations, in consultation with Mr. Wen, Mr. Qu, Ms. Wang and others, until September 30, 2004.

Business conducted between BRLE and Wen Enterprises was done primarily by fax, with some business also conducted by telephone and e-mail. The business typically worked as follows. Ms. Wang, Mr. Qu and others at BRLE would develop customers ("end-users") in China that were in need of IC components. Those customers included state-owned, military, and commercial (private) businesses in China. When customers identified parts that they wished to purchase from BRLE, Ms. Wang, Mr. Qu or others at BRLE requested price quotations for those parts from Wen Enterprises. Mr. Wen, and later Ms. Lin, would locate United States distributors for the parts and provide a price quotation to BRLE. If the price was acceptable, BRLE employees would notify Wen Enterprises that it wished to purchase the part. Mr. Wen or Ms. Lin would then order the part from a United States distributor, have it shipped domestically to Wen Enterprises, consolidate the parts for shipment to BRLE in China, and export them to BRLE.

Beginning in March 2004, Ms. Lin learned that completion of a Shipper's Export Declaration ("SED") would be required for each shipment with a value of $2,500 or more. Additionally, UPS informed Ms. Lin that it would no longer complete an SED for her, and instead, she would be

3

required to complete the SED for each shipment. Finally, Ms. Lin also learned, from an e-mail from a United States distributor, that Wen Enterprises had exported parts to BRLE that had required export licenses from the Department of Commerce because the parts were controlled for national security reasons. This information was communicated to Mr. Qu and others at BRLE.

Because the SED required that Ms. Lin report export license information, and because licenses were not being obtained for parts that otherwise required a license, Ms. Lin and Mr. Qu agreed that Ms. Lin would begin to falsify shipping invoices for shipments with a value over $2,500. Ms. Wang was aware of this agreement and thereafter participated in shipments involving false invoices.

Beginning at least by April 2004, consistent with their agreement, Ms. Lin began to reflect that every shipment of parts exported from Wen Enterprises to BRLE had a value of under $2,500. Ms. Lin would prepare a dummy or "unofficial" invoice wherein she would reduce the prices of some parts and would omit others from the invoice in order to cause the value of the shipment to drop below $2,500. The "unofficial" invoice was then used as the shipping invoice that Ms. Lin would include in paperwork provided to the shipper (such as UPS or DHL) for the shipment. These false statements and concealment of the true values of the shipments each time caused the shipper not to require that an SED be prepared or filed with the United States, and thus the actual value of the shipment and its contents were concealed from the United States Customs Service and the Department of Commerce, Bureau of Industry and Security.

When Ms. Lin sent the parts to BRLE with a false "unofficial" shipping invoice, she would also fax a group of documents to BRLE which Ms. Wang, Mr. Qu and others at BRLE would review and use in their business. Included in the fax would be the "unofficial" invoice and the accurate

4

("official") invoice which included all parts at their correct prices. Ms. Wang and the other BRLE employees would rely on the official invoice to verify that they had received all of the order and to sort the parts for forwarding on to their clients/end-users in China.

In particular, relating to Count Four, on May 21, 2004, Hailin Lin exported a shipment of IC parts to BRLE in Beijing, China. On the shipping invoice, she indicated that the shipment contained 23 parts valued at $2,469.60. In fact, the export contained -- and the official invoice faxed to Ms. Wang, Mr. Qu and others at BRLE reflected – 47 parts valued at over $11,300. By making this false statement and concealing the true value of the shipment from the shipper, the shipper did not require Ms. Lin to complete an SED, and thus, this export was concealed from the United States Customs Service, and the United States Department of Commerce, Bureau of Industry and Security.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: 10 years' imprisonment, and a fine of $250,000. The count also carries a mandatory special assessment of $100.00, and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the indictment and the remaining counts of the superseding indictment at the time of sentencing as to defendant Wang.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge set forth in Count Four, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant made, or aided and abetted another in making, a false statement to, or concealing a material fact from, a United States government agency, either directly or indirectly through another; and
> Second, the defendant did so willfully.

## SENTENCING PROVISIONS

10. The parties agree that a Presentence Reprort is unnecessary and that the change of plea hearing and sentencing hearing should occur on the same date.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph four. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

### Sentencing Guidelines Calculations

13. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate

6

sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Base Offense Level

14. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count four is 14 under U.S.S.G. § 2M5.1(a)(2).

## Specific Offense Characteristics

15. The parties agree to recommend to the sentencing court that no adjustment for any specific offense characteristic is applicable to the offense level for the offense charged in count four.

## Role in the Offense

16. Pursuant to Sentencing Guidelines Manual § 3B1.2, the parties agree to recommend a two-level reduction for mitigating role in the offense.

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

18. Both parties reserve the right to apprise the district court of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct

related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

20. The parties agree to jointly recommend a sentence of time-served.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that the sentencing court is not a party to or bound by this agreement. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph seven. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

23. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

### Fine

24. The parties agree to recommend to the sentencing court that the defendant pay a fine of $1,500.00.

8

## Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Forfeiture

26. The defendant acknowledges that she has no right, title or interest in any of the property named in the forfeiture provision of the superseding indictment.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that in so doing she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government

9

is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

28. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

30. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the

10

sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

## GENERAL MATTERS

31. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

32. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

33. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

11

## VOLUNTARINESS OF DEFENDANT'S PLEA

34.     The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4-8-05

RUO LING WANG
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 4/8/05

TOM PHILLIP
DEAN STRANG
Attorneys for Defendant Ruo Ling Wang

For the United States of America:

Date: 4-8-05

STEVEN M. BISKUPIC
United States Attorney

Date: 4-8-05

MICHELLE L. JACOBS
Assistant United States Attorney

13

Case 1:04-cr-00241-WCG   Filed 04/08/05   Page 13 of 13   Document 128